**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAREN DANZY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-02083 (RCL/RMM) |
| | ) |
| IATSE Local 22, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff, Daren Danzy ("Mr. Danzy"), has sued Defendants IATSE[1] Local 22

("Local 22") and three Local 22 officers and employees (collectively referred to as "Individual

Defendants"), John Brasseaux ("Mr. Brasseaux"), Cathy Sonneborn[2] ("Ms. Sonneborn"), and I.

Chuck Clay ("Mr. Clay") for racial discrimination.[3]  Although discovery closed on January 25,

2020, four discovery motions remain pending: (1) Local 22 has moved to compel Mr. Danzy to

provide more complete discovery responses; (2) Mr. Danzy has requested leave to issue fifteen

subpoenas to depose witnesses and seek documents; (3) Local 22 has moved for a protective

order to preclude issuance of Mr. Danzy's proposed subpoenas; and (4) Mr. Danzy has moved

---

[1] IATSE stands for International Alliance of Theatrical Stage Employees.

[2] Ms. Sonneborn's last name also appears as "Sonneborm" in the record.  *See* ECF No. 18 (First Amended Complaint) ("Compl.").

[3] Defendants claim that Mr. Danzy failed to serve Individual Defendants, and no counsel appeared for them during discovery.  *See* ECF No. 53-2 (Memorandum in Support of Summary Judgment) ("Sum. Judgment Mem.") at 22; *see also* Oct. 21, 2019 Minute Order (extending time to complete discovery to January 25, 2020); ECF No. 52 (Notice of Appearance by Jacob Nicholas Szewczyk); ECF No. 55 (Notice of Appearance by Jennifer Rachel Simon).  The undersigned refers to motions filed during discovery by Local 22 as Local 22's motions.

for leave to increase the number of individuals he may depose.  *See* ECF No. 47 (Motion to Compel) ("Mot. to Compel"); ECF No. 48 (Motion to Issue Subpoenas) ("Mot. for Subpoenas"); ECF No. 49 (Motion for Protective Order) ("Mot. for Prot. Order"); ECF No. 63 (Motion to Increase Depositions) ("Mot. to Increase Deps.").[4]  By order entered September 10, 2019, the Honorable District Judge Royce C. Lamberth referred all discovery-related issues to the undersigned Magistrate Judge for management and resolution.  Having reviewed the parties' written submissions and considered the parties' respective arguments presented at a September 2, 2020 motion hearing, the undersigned GRANTS Local 22's motion to compel, GRANTS-IN-PART and DENIES-IN-PART Mr. Danzy's motion to issue subpoenas, DENIES Local 22's motion for protective order, and GRANTS-IN-PART Mr. Danzy's motion to take additional depositions.[5]

## BACKGROUND

### I.    Factual Background

At all times relevant, Mr. Danzy, an African-American male in his 40s, worked as a stagehand and received employment referrals through Local 22's referral system.  *See* Compl. ¶¶ 4, 6.  On January 22, 2017, Mr. Danzy was involved in a physical altercation with another Local

---

[4] Mr. Danzy has also indicated that there is a potential fifth discovery dispute in which he seeks the complete unredacted witness statement of Peter Shedleski ("Mr. Shedleski").  ECF No. 45 ("Status Report").  Without more information, the undersigned cannot evaluate this request.

[5] On September 2 and September 4, 2020, Mr. Danzy emailed the Court and copied Defendants' counsel with what appears to be additional arguments and attachments for the undersigned's consideration.  Defendants have objected to Mr. Danzy's email as an unsolicited attempt to present additional arguments that should be disregarded, and Mr. Danzy has apologized.  At the Motion Hearing, the undersigned indicated that should additional information be needed from the parties, the undersigned would enter an order on the docket.  No further information regarding the pending four discovery motions is needed, and any additional information provided by the parties is disregarded.  *See* ECF No. 64 (Notice of Objection to Correspondence); ECF No. 67 (Notice of Apology).

2

22 stagehand Curryn Bennett ("Mr. Bennett")[6] at the Washington D.C. Convention Center ("Convention Center").  *See id.* ¶¶ 1, 11, 29; ECF No. 38 (Motion to Issue Subpoena to the Convention Center) ("Mot. to Subpoena Convention Center").  After the altercation, Local 22 held a disciplinary hearing on February 7, 2017 (the "February Disciplinary Hearing") and upon deliberation suspended Mr. Danzy from its referral system for one year.  *See* Compl. ¶¶ 4, 19; *see also* SOF ¶¶ 25–43.

Mr. Danzy now claims that Local 22's policies and practices have subjected him to systemic racial discrimination, which not only denied him work opportunities but also precipitated the altercation on January 22, 2017.  *See* Compl. ¶¶ 1, 12–13.  Specifically, Mr. Danzy alleges that "Cathy Sonnebor[n], ... handicap[ed] [his] earnings and ability to make benefits by not fairly and justly awarding merited earned Calls based on [Local 22's] Rules and Procedures."  *Id.* ¶ 20.  Mr. Danzy also alleges that because of his size and race, he was referred only to unskilled, (non-advancing) work tasks, such as unloading trucks, while smaller Caucasian stagehands, and females, were given more skilled tasks that afforded better advancement opportunities.  *See id.* ¶¶ 23–24.  Mr. Danzy suggests another impetus for this difference, which is that Local 22 leadership ultimately decided that "too many African-American Referrals were making too much money."  *Id.* ¶ 22.

## II.    Procedural History

Mr. Danzy initiated his suit against Local 22 on August 31, 2017 in the Superior Court for the District of Columbia, and on October 6, 2017, Local 22 removed this action to federal court.  *See* ECF No. 1 (Notice of Removal).  On September 4, 2018, Mr. Danzy filed his First

---

[6] Mr. Bennett's first name is also spelled "Curren" or "Curran" in the record.  *See* ECF No. 51 (Reply in Support of Mot. for Prot. Order) at 4 n.2; ECF No. 53-1 (Statement of Material Facts in Support of Defendants' Motion for Summary Judgment) ("SOF") ¶ 26.

Amended Complaint, which added Individual Defendants to his racial discrimination claim.[7]  *See generally* Compl.  On July 19, 2019, the Court entered a scheduling order, which required the parties to exchange initial disclosures by August 1, 2019 and to complete all discovery by November 25, 2019.  *See* ECF No. 35 ("Scheduling Order").  The scheduling order also limited each party to taking no more than five depositions during discovery and required that "all discovery requests shall be served in time for the responses to be served by [the November 25, 2019 all-discovery] deadline."  *See id.* at 1–2 & n.1.

Within a week after the Court entered its scheduling order, on July 25, 2019, Mr. Danzy moved to issue a subpoena to the Convention Center for production of video and all statements and reports regarding the January 22, 2017 physical altercation between Mr. Danzy and Mr. Bennett.  *See* Mot. to Subpoena Convention Center.  On September 5, 2019, Mr. Danzy moved to extend discovery, in part because he was still waiting for the Court to rule on his motion to subpoena the Convention Center.  *See* ECF No. 39 (Motion to Extend Discovery) ("Mot. to Extend").  Over Local 22's objection, the Court extended discovery until January 25, 2020.  *See* ECF No. 41 (Response to Motion to Extend Discovery); Oct. 21, 2019 Minute Order.  Meanwhile, on November 29, 2019, Local 22 moved to compel Mr. Danzy to file complete discovery responses.  *See* Mot. to Compel.  On December 13, 2019, the Court granted Mr. Danzy's motion to subpoena the Convention Center, and over the next two weeks, Mr. Danzy sought leave to issue fifteen more subpoenas to third parties, including three motions to subpoena the depositions of Individual Defendants and one motion to subpoena the deposition of the Administrator for Local 22's Pension and Welfare Funds ("Funds"), Natalia Jordan ("Ms.

---

[7] Mr. Danzy's First Amended Complaint also sought claims for retaliation and hostile work environment, which Local 22 moved to dismiss and the Court granted.  *See generally* Compl.; ECF No. 19 (Motion to Dismiss); DE 29 (Order).

Jordan").[8]  *See* Dec. 13, 2019 Minute Order; Mot. for Subpoenas; *see also* Subpoenas.  On

January 10, 2020, Local 22 moved for a protective order precluding issuance of all fifteen

proposed subpoenas.  *See* Mot. for Prot. Order.

On January 25, 2020, discovery closed and on February 19, 2020, counsel for Local 22

filed their appearances for Individual Defendants, who appeared for the first time on record.  *See*

ECF No. 52; ECF No. 55.  On the same day, all Defendants moved for summary judgment.  *See*

ECF No. 53 (Motion for Summary Judgment) ("Mot. for Sum. Judgment").  In their summary

judgment motion, Defendants included four supporting declarations from Individual Defendants

and Ms. Jordan, each of whom Local 22 had opposed Mr. Danzy subpoenaing during discovery.

*See* Mot. for Subpoenas; Mot. for Prot. Order; ECF No. 53-5 (Declaration of Cathy Sonneborn)

("Sonneborn Decl."); ECF No. 53-6 (Declaration of Irving Chuck Clay) ("Clay Decl."); ECF No.

53-7 (Declaration of John Brasseaux) ("Brasseaux Decl."); ECF No. 53-8 (Declaration of Natalia

Jordan) ("Jordan Decl.").

Although discovery has closed and Defendants have filed a motion for summary

judgment, on August 28, 2020, Mr. Danzy moved to increase the number of depositions that he

may take during discovery and on September 2, 2020, the undersigned held a motion hearing

(the "Motion Hearing") to discuss the four pending discovery motions and the prospect of

reopening discovery should the Court grant Mr. Danzy leave to issue subpoenas.  *See* Mot. to

---

[8] Mr. Danzy's proposed subpoenas also include five subpoenas to depose third parties
Mr. Bennett, Shelia Boykins ("Ms. Boykins"), Mr. Shedleski, Anita Hartsock (Ms. Hartsock"),
and Lynn Thomas ("Ms. Thomas") and six subpoenas for documents, including his own phone
records from Verizon Security Assistance ("Verizon") and AT&T, and for "Local 22 Personnel
Data & Metrics" from Local 22's Benefits Office at the attention of Ms. Jordan and from three
employer signatories to Local 22's collective bargaining agreement: Ford's Theatre Society
("Ford's Theatre"), The John F. Kennedy Center for Performing Arts (the "JFK Center"), and
Wolf Trap National Park for Performing Arts ("Wolf Trap").  *See* Mot. for Subpoenas; ECF No.
49-5 ("Subpoenas").

Increase Deps.; Minute Entry dated Sept. 2, 2020.  At the Motion Hearing, Defendants objected

to reopening discovery and urged this Court to put aside the pending discovery motions and

proceed solely on Defendants' motion for summary judgment.

## LEGAL STANDARD

A party may discover any information that is not privileged and is relevant to the claim or

defense of any party.  *See* Fed. R. Civ. P. 26(b)(1).  Information is relevant if it reasonably could

lead to other matters that could bear on any party's claim or defense and it "need not be

admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1); *see United States ex rel.*

*Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016).  Federal district courts have wide discretion

when handling pretrial discovery matters, and "discovery under the Federal Rules of Civil

Procedure should be freely permitted."  *United States v. Sci. Applications Int'l Corp.*, 301 F.R.D.

1, 3 (D.D.C. 2013) (citing *Edmond v. U.S. Postal Serv. Gen.* Counsel, 949 F.2d 415, 425 (D.C.

Cir. 1991)); *see also Childers v. Slater*, 197 F.R.D. 185, 187 (D.D.C. 2000) (citing *United*

*Presbyterian Church v. Regan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984)).  The Court's powers to

manage discovery include limiting the "extent of discovery otherwise allowed," "forbidding the

disclosure or discovery," "specifying the terms, including time and place, for the disclosure of

discovery," and "order[ing] that [a] party or person provide or permit discovery."  *See* Fed. R.

Civ. P. 26(b)–(c).  The undersigned addresses each of the pending discovery motions in turn

below.

## DISCUSSION

### I.    Local 22's Motion to Compel

A party may submit to another party interrogatories that relate to any non-privileged

matter that is relevant to a party's claims or defenses as described under Rule 26(b) of the

Federal Rules of Civil Procedure.  Fed. R. Civ. P. 33(a).  A party may also serve requests "within the scope of Rule 26(b) to produce ... any designated documents."  Fed. R. Civ. P. 34(a)(1).  When a party fails to respond to a proper interrogatory or document request, "the other party may—after first attempting to resolve the issue by conferring with the other party—file a motion to compel."  *See Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 5 (D.D.C. 2012) (citing Fed. R. Civ. P. 37(a)(1)); *see also* LCvR 7(m).

After properly conferring with Mr. Danzy, Local 22 moved to compel Mr. Danzy to provide complete responses to interrogatories two, three, four, eight, nine, and ten and to provide documents in response to requests one, three, and four.[9]  *See* Mot. to Compel at 2.  Since filing its motion to compel, however, Local 22 has backed away from its discovery requests and at the Motion Hearing, asked this Court to allow discovery to remain closed and consider Defendants' motion for summary judgment.  However, Local 22 qualified that if, for other reasons, discovery is reopened, then it would still want all information requested in its motion to compel.  Because the undersigned has decided to reopen discovery to allow time for Mr. Danzy to issue and receive responses to permitted subpoenas, the undersigned has also reviewed the information that Local 22 requested in its motion to compel and now GRANTS that motion as follows.

---

[9] On October 8, 2019 and again on October 10, 2019, counsel for Local 22 emailed Mr. Danzy to schedule a conference to discuss Mr. Danzy's discovery responses.  *See* Mot. to Compel at 2.  In a written response, Mr. Danzy specifically asked that Local 22 itemize and state which answers it felt were deficient, to which Local 22 complied.  *See* Status Report ¶¶ 8–9.  Mr. Danzy then notified Local 22 that he intended to have the missing information available by October 27, 2019.  *See id.*  Unfortunately, however, Mr. Danzy was unable to gather additional information by that date and could not cure the deficiencies in his responses.  *See id.*  Local 22 moved to compel on November 29, 2019.  *See* Mot. to Compel.

### A. *Interrogatories that Mr. Danzy Should Respond to or Supplement*

Mr. Danzy has failed to provide any response to interrogatories nine and ten as required. *See* Mot. to Compel at 6; ECF No. 47-4, Exhibit A (Local 22's First Request for Answers to Interrogatories) ("Interrogatories"); ECF No. 47-4, Exhibit C (Mr. Danzy's Response to Local 22's First Request for Answers to Interrogatories) ("Interrogatory Response"); Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").  Accordingly, Mr. Danzy should submit his answers to interrogatories nine and ten within the time period prescribed in the accompanying order.

In addition, Mr. Danzy's responses to interrogatories three and eight are insufficient and should be supplemented.  *See* Mot. to Compel at 4–5.  Interrogatory three seeks "all information and evidence" supporting Mr. Danzy's discrimination claim against Local 22, and interrogatory eight seeks "all facts and evidence" supporting or refuting Mr. Danzy's statement regarding "the disparate work practices and policies that systemically discriminate [against] him and other African Americans in the Referral Membership[.]"  Interrogatories at 4, 6.  Mr. Danzy's answers to those requests are partially responsive, to the extent that they identify video and audio footage and the disparate treatment of other witnesses.  *See* Interrogatory Response at 2–4, 5.  However his answers also include broad references to "other historic official polices, documents, and statistic[s] that will be data mined in subsequent discovery requests," and fail to identify the witnesses who he contends were treated preferentially, suffered similar discrimination, or will refute Local 22's arguments.  *See id.*  Those responses are too vague because they do not explicitly identify the official policies, documents, and statistics gathered in discovery, or the witnesses from whom Mr. Danzy expects favorable testimony.  *See Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 32–35 (D.D.C. 2007) (finding interrogatory responses with

general descriptions incomplete to the extent they do not provide full responses to the questions asked).  Accordingly, Mr. Danzy should supplement and clarify his answers to interrogatories three and eight to the best of his ability.  *See* Fed. R. Civ. P. 26(e)(1).

Mr. Danzy also should supplement his response to interrogatory two, which asks Mr. Danzy to provide the name, address, telephone number, and employer of each person with knowledge of any facts regarding allegations in his Complaint or in his answers to interrogatories.  *See* Interrogatories at 5.  In his response, Mr. Danzy objects to this interrogatory as vague because it does not identify any specific allegation in his Complaint.  *See* Interrogatory Response at 2.  Interrogatory two is not vague, and despite his *pro se* status, Mr. Danzy should be able to answer the interrogatory as written.[10]  Mr. Danzy should answer interrogatory two to the best of his ability, providing as much information as he has about the people he believes have knowledge about his claims or the interrogatory responses.  *See* Fed. R. Civ. P. 26(e)(1).

Finally, Mr. Danzy should clarify his response to interrogatory four, which asks Mr. Danzy to identify all periods of 30 days or more when Mr. Danzy lived outside Local 22's jurisdiction and the location where he lived and worked during that time.  *See* Interrogatories at 5.  In response, Mr. Danzy stated that he worked at Camp Lejeune North Carolina from late September 2013 to January 2014 but could not recall the exact dates "without those documents."  *See* Interrogatory Response at 4.  Local 22 claims that Mr. Danzy's reference to "those documents" is too vague, and the undersigned agrees.  *See* Mot. to Compel at 5.  If he has not

---

[10] For example, in his initial disclosures, Mr. Danzy lists individuals with discoverable information regarding allegations in his Complaint, which appears to provide nearly the same information that interrogatory two is requesting.  *See* ECF No. 45-1 (Mr. Danzy's Initial Disclosures).  Mr. Danzy should be able to easily answer interrogatory two by referring Local 22 to his initial disclosures, but should also provide any additional information that interrogatory two is seeking that is not already contained in Mr. Danzy's initial disclosures.

already done so, Mr. Danzy should clarify what documents he is referring to in his response to interrogatory four. *See* Fed. R. Civ. P. 26(e)(1).

At the Motion Hearing, Mr. Danzy explained that he needs additional discovery from other sources in order to more fully answer Local 22's discovery requests. As discussed below, the undersigned will allow Mr. Danzy to conduct some additional discovery. But that does not relieve him of the obligation to answer Local 22's discovery in the interim using the information he already possesses. If Mr. Danzy learns additional facts through discovery, he should supplement his responses.

### B.   *Responses to Requests for Document Production that Mr. Danzy Should Provide or Supplement*

As for Local 22's document requests, the undersigned agrees that Mr. Danzy should provide documents responsive to request three that are in his possession as soon as possible and should provide any additional documents that he receives through subpoenas or otherwise that are responsive to requests one and four as he receives them. *See* Mot. to Compel at 6–8.

Mr. Danzy has not provided any responsive documents to Local 22's third document request, which asks Mr. Danzy to provide copies of financial documents regarding "any and all employment, as a stagehand and also in other fields of employment." *See* Mot. to Compel at 7; ECF No. 47-4, Exhibit B (Local 22's First Request for Production of Documents) ("Requests") at 4. Local 22 claims that Mr. Danzy's financial documents are relevant to Mr. Danzy's assertion that Local 22 "severely handicap[ped]" his earnings. *See* Mot. to Compel at 7 (citing Compl. ¶ 20). At the Motion Hearing, Local 22 also stated that such documents are relevant to establishing whether Mr. Danzy was available for Local 22's referrals. In response, Mr. Danzy argued at the Motion Hearing that Local 22 has other ways to show whether he declined work with Local 22 and that his financial records are privileged. *See also* Status Report ¶ 6.

Mr. Danzy's financial documents are relevant to establishing Mr. Danzy's earnings and may also be relevant to establishing Mr. Danzy's general work availability.  Additionally, even if Local 22 has other means of determining the latter, Mr. Danzy has not shown that he would suffer any undue burden or hardship by gathering responsive financial records in his own possession.  Mr. Danzy's privilege objection is not enough to withhold financial documents altogether, but "many courts recognize the important privacy and confidentiality concerns raised by their disclosure."  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 142 F. Supp. 3d 37, 47 (D.D.C. 2015).  Accordingly, the undersigned directs the parties to confer and propose a joint protective order that this Court can enter to maintain the confidentiality of information contained in Mr. Danzy's financial records.  Thereafter, Mr. Danzy must provide Local 22 with copies of financial records in his possession as directed in the accompanying order.  *See* Fed. R. Civ. P. 26(e)(1).

Local 22 claims that Mr. Danzy has not provided any documents in response to its first document request, which seeks "all documents and evidence which supports, or refutes," Mr. Danzy's discrimination claim against Local 22.  *See* Mot. to Compel. 6–7; Requests at 4.  In response, Mr. Danzy stated that he is "making a concerted effort to restore old hard-drive to get screen shots taken of the calls."  ECF No. 47-4, Exhibit D (Mr. Danzy's Response to Local 22's First Request for Production of Documents) ("Request Response") at 1–2.  At the Motion Hearing, Mr. Danzy clarified that he has been specifically looking for screen shots of calls that he made to Local 22 to show that he reported his availability to work, but that he could not retrieve these screen shots from his electronic devices and now seeks to subpoena his phone records directly.  *See* Mot. for Subpoenas.  Mr. Danzy also explained that he was largely unable to provide documents and information to Local 22 without first obtaining those documents from

other sources through discovery.  With these clarifications in mind, the undersigned will not require Mr. Danzy to supplement his response to Local 22's first request for documents unless he is able to gather documents responsive to this request through a subpoena or otherwise.  *See* Fed. R. Civ. P. 26(e)(1)(A).

Similarly, Local 22's fourth request seeks "all documents or evidence regarding the January 22, 2017 altercation with Mr. Bennett."  *See* Requests at 4.  Since responding to this request, however, Mr. Danzy was granted leave to subpoena documents related to the January 22, 2017 altercation from the Convention Center.  *See* Dec. 13, 2019 Minute Order.  If he has not already done so, Mr. Danzy should review the records he received from the Convention Center and produce those to Local 22.  Additionally, if Mr. Danzy obtains more responsive records, through subpoena or otherwise, he should produce those to Local 22 as well.  *See* Fed. R. Civ. P. 26(e)(1)(A).

## II.      Mr. Danzy's Motion for Leave to Issue Subpoenas and Local 22's Motion for Protective Order

Rule 45 of the Federal Rules of Civil Procedure allows a party seeking discovery to issue a subpoena commanding the recipient to testify, produce documents, or permit inspection of a premise.  *See* Fed. R. Civ. P. 45.  A *pro se* litigant is unable to issue a subpoena on his own behalf and must seek leave from the Court to do so instead.  *See Henok v. Chase Home Finance, LLC*, No. 12-00336 (PLF-AK), 2014 WL 12775309, *4 (D.D.C. July 14, 2014); Fed. R. Civ. P. 45(a)(2)-(3).  "A party ... from whom discovery is sought may move for a protective order" to preclude discovery upon a showing of good cause, such as protecting a party "from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c).  "The party requesting the protective order bears the burden of showing good cause contemplated by [Rule 26]" of the Federal Rules of Civil Procedure.  *U.S. v. Kellog Brown & Root Services, Inc.*, 285

F.R.D. 133, 134 (D.D.C. 2012) (citing *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998)).

Additionally, the moving party must "articulate specific facts to support its request" rather than

relying on "speculative or conclusory statements." *Klayman v. Judicial Watch, Inc.*, 247 F.R.D.

19, 23 (D.D.C. 2007) (internal quotations and citations omitted).

### A.   *Standing to Challenge a Third-Party Subpoena*

At the Motion Hearing, Mr. Danzy noted several times that Local 22 lacks standing to

challenge or seek a protective order against his request to issue subpoenas to third parties.  While

a party generally cannot challenge a subpoena issued to a third party absent an assertion of

privilege, proprietary interest, or personal right to the information requested, a third-party

subpoena issued pursuant to Federal Rule of Civil Procedure 45 is still limited by Rules 16 and

26.  *See Washington v. Thurgood Marshall Acad.* 230 F.R.D. 18, 21 (D.D.C. 2005) (citations

omitted) ("A motion to quash, or for a protective order, should generally be made by the person

from whom the documents or things are requested.") (citations omitted); *Hesco Bastion Ltd. v.*

*Greenberg Traurig LLP*, No. 09-00357 RWR/DAR, 2009 WL 5216932, at *3 (D.D.C. Dec. 23,

2009) (noting that Rule 26's limits on discovery also apply to the scope of a subpoena) (citing *In*

*re Motion to Compel Compliance with Subpoena Direct[ed] to Department of Veterans Affairs*,

257 F.R.D. 12, 18 (D.D.C. 2009); *see also Watts v. S.E.C.*, 482 F. 3d 501, 507 (D.D.C. 2007)).

Accordingly, a party may seek a protective order to limit discovery directed to a third party if it

believes that the information sought falls outside the scope of discovery, is clearly irrelevant, or

fails to comply with discovery deadlines.  *See Washington*, 230 F.R.D. at 22 (noting that

defendant lacked standing to move to quash a rule 45 subpoena but could move for a protective

order under Rule 26); *see also Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 108

(noting that "[i]n such circumstances, it is appropriate for this Court to exercise its discretion and ... issue a protective order prohibiting the discovery sought by Plaintiffs' subpoena.").

Local 22 maintains that it has good cause to request a protective order because issuing the subpoenas will prejudice Local 22 and violate discovery orders, and the subpoenas seek information that is irrelevant, duplicative, or more easily accessed from another source. *See* ECF No. 49-1 (Statement in Support of Motion for Protective Order) ("Mot. for Prot. Order Stmt.") at 3–6. Because Local 22's motion for protective order raises concerns that Mr. Danzy's subpoenas fall outside the scope of discovery permitted under Rules 16 and 26 of the Federal Rules of Civil Procedure, the undersigned will consider each of Local 22's arguments in turn.

### B. Prejudice

Local 22 claims that issuing Mr. Danzy's subpoenas will prejudice Local 22 by hindering its ability to complete discovery and will burden and annoy Local 22 and delay the completion of this action. *See* Mot. Prot. Order Stmt. at 3–5. Specifically, Local 22 claims that the subpoenas will interfere with its ability to prepare for and conduct Mr. Danzy's deposition. *See id.* at 5. At the Motion Hearing more recently, Local 22 also stated that it has spent an inordinate amount of time and money in good faith litigating this action. However, "a party seeking a protective order prohibiting deposition testimony or document production must establish ... a specific need for protection, as opposed to simply making conclusory or speculative statements." *Washington*, 230 F.R.D. at 21 (citing *Alexander*, 186 F.R.D. at 75). Local 22's generalized allegations of harm do not amount to a showing of good cause. *See id.* ("The movant must establish good cause 'by demonstrating the specific evidence of the harm that would result.'") (citing *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001)).

Local 22 has already deposed Mr. Danzy, therefore the subpoenas will not hinder its ability to prepare for that deposition. *See* ECF No. 53-9, Exhibit A (Deposition Transcript of Daren Danzy). Likewise, conclusory arguments that a subpoena will prolong or delay litigation are not enough to establish prejudice. *See Wash. Metro. Area Transit Comm'n Reliable Limousine Serv.*, 776 F.3d 1, 5 (D.C. Cir. 2015) ("[D]elay that merely prolongs litigation is not a sufficient basis for establishing prejudice.") (internal quotations and citations omitted). Although Local 22 claims that the additional discovery will burden and annoy Local 22, it also fails to specifically address how such discovery from third parties will unduly burden Local 22. *See Campbell v. U.S. Dep't. of Justice*, 231 F. Supp. 2d 1, 14 (D.D.C. 2002) (noting that movant's assertions that the perceived discovery would be burdensome merely reflects an inconvenience and an expense that the movant failed to show was related to the discovery requested). Finally, while issuing subpoenas, even to third parties, may lead to additional discovery on Local 22's part, Local 22 has not indicated that the time and expense of any additional discovery is excessive or prohibitive. *See Jordan v. U.S. Dep't of Justice*, 315 F. Supp. 3d 584, 595 (D.D.C. 2018) (noting that mere inconvenience or expense is insufficient to constitute good cause).

### C.  Relevance

Local 22 argues that all fifteen of Mr. Danzy's proposed subpoenas should be denied because they seek information that is either irrelevant to Mr. Danzy's claims or defenses or could be obtained from some other source that is more convenient. *See* Mot. Prot. Order Stmt. at 5–6. When reviewing a motion for protective order, a court can evaluate whether the information requested is relevant to any claims or defenses raised in a case and must limit any requests for discovery that are "unreasonably cumulative or duplicative." *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

The undersigned agrees that some of Mr. Danzy's proposed subpoenas seek irrelevant, cumulative, or duplicative discovery, and therefore denies-in-part Mr. Danzy's request for leave to issue subpoenas.

### 1.   Subpoena to Depose Witnesses

Mr. Danzy's request to subpoena Mr. Brasseaux, Ms. Sonneborn, and Mr. Clay's deposition testimony properly seeks relevant information because each individual is a named defendant in this action whose testimony is likely to include information that relates to Mr. Danzy's claims and defenses in this case. *See* Mot. for Subpoenas; Subpoenas. At all relevant times, Mr. Brasseaux was the Business Agent for Local 22, whose many duties included responding to employee grievances and communications and who represented Local 22 and presented evidence against Mr. Danzy at the February Disciplinary Hearing. *See* Compl. ¶ 5; Brasseaux Decl. ¶¶ 1–2, 15. Ms. Sonneborn is the Call Stewart for Local 22 whose duties include referring stagehands to fill jobs. *See* Compl. ¶ 5; Sonneborn Decl. ¶ 3. Mr. Danzy has alleged specifically that Ms. Sonneborn harmed him by not fairly and justly awarding him "merited earned Calls." Compl. ¶ 20. Finally, Mr. Clay was at all relevant times, President of Local 22 and oversaw the February Disciplinary Hearing. *See id.* ¶ 5; Clay Decl. ¶¶ 1–2, 14. The fact that Defendants have moved for summary judgment with supporting declarations from each Individual Defendant only underscores the relevance of their testimony in this case. *See generally* Mot. for Sum. Judgment. Local 22 has also provided no specific arguments as to why the Individual Defendants' testimony is not relevant. *See generally* Mot. for Prot. Order.

The undersigned also finds that Ms. Jordan's deposition testimony is relevant to Mr. Danzy's claims or defenses. *See* Mot. for Subpoenas; Subpoenas. As Local 22's Funds Administrator, Ms. Jordan is required to keep "records of contributions made by employers to

the benefit Funds on behalf of members and referrals from Local 22 who work in covered employment." *See* Jordan Decl. ¶ 2. Defendants have relied on Ms. Jordan's testimony in their motion for summary judgment to establish Mr. Danzy's total earnings as a stagehand. *See* SOF ¶ 17. However, as Mr. Danzy stated at the Motion Hearing, he also seeks evidence regarding his earnings, the number of hours he was available to work, and the number of hours he was called to work compared to other Local 22 members. *See also* Subpoenas. Therefore, Ms. Jordan's testimony is relevant to multiple parties' claims and defenses. Likewise, because Mr. Danzy has requested leave to subpoena documents from Local 22's Benefits Office, Ms. Jordan's testimony would be relevant to authenticating those records. *See id.* Local 22 has asked this Court to bar Mr. Danzy from deposing Ms. Jordan because her input was not relevant to Local 22's hiring and disciplinary decisions. However, even if Ms. Jordan's testimony is not relevant for one issue, it does not follow that her testimony is not relevant for any other claims or defenses.

Mr. Danzy's subpoenas to depose Mr. Bennett, Ms. Hartsock, and Ms. Boykins also seek testimony that is potentially relevant to Mr. Danzy's underlying claims and defenses. *See id.*; Mot. for Subpoenas. Both Mr. Bennett and Ms. Hartsock were witnesses to the January 22, 2017 altercation and testified at the February Disciplinary Hearing about that altercation. *See* Clay Decl. ¶ 16; ECF No. 53-7, Exhibit 4 (Statement from Curren Bennett) ("Bennett Stmt."); ECF No. 53-7, Exhibit 5 (Statement from Anita Hartsock). Mr. Bennett also appears to claim that Mr. Danzy assaulted and injured him. *See* Bennett Stmt. at 1. Ms. Boykins also testified at the February Disciplinary Hearing about allegations that Mr. Danzy engaged in sexual harassment. *See* Clay Decl. ¶ 16; ECF No. 53-7, Exhibit 6 (Statement from Shelia Boykin). Local 22 states that it has provided Mr. Danzy with copies of each witness's statements and an audio recording of the February Disciplinary Hearing. Local 22 suggests that deposing these witnesses would be

duplicative and cumulative in light of their prior testimony.  The fact that these witnesses testified in hearings that occurred prior to litigation should not preclude them from being deposed in this case.  However, given that Mr. Danzy has not explained how the potential testimony that he seeks from each witness would differ from the testimony that each witness has previously provided, the undersigned will limit the length of the proposed depositions to no more than two hours per witness.  Subject to that limitation, the undersigned grants Mr. Danzy's request for leave to issue subpoenas for the depositions of Mr. Curren, Ms. Hartsock, and Ms. Boykins.[11]

Turning to the remaining two witnesses, Mr. Shedleski and Ms. Thomas, there is not enough information in the record to determine whether these individuals' potential testimony is relevant to Mr. Danzy's claims and defenses.  *See* Mot. for Subpoenas; Subpoenas.  It appears that Mr. Shedleski is a current or former Local 22 member who may have witnessed the January 22, 2017 altercation but did not testify at the February Disciplinary Hearing.  *See* Bennett Stmt.; Status Report ¶ 4; *see also* SOF ¶ 29; Clay Decl. ¶ 16.  Mr. Danzy also initially suggested that he received a redacted copy of a statement from Mr. Shedleski, but at the Motion Hearing, Mr. Danzy stated that he never received such statement.  *See* Status Report ¶ 4.  Without more information about the potential testimony that Mr. Danzy seeks from Mr. Shedleski, the undersigned cannot assess whether Mr. Shedleski's testimony is relevant and denies Mr. Danzy's request to subpoena Mr. Shedleski at this time.  Likewise, it appears that Ms. Thomas is a current or former agent or officer of Local 22, but beyond that, the undersigned has no other information

---

[11] The fact that this would yield seven depositions, instead of the five permitted under the discovery order, is discussed in Part D below.

available to assess her relevance and denies Mr. Danzy's request to issue a subpoena for Ms. Thomas' deposition.[12]

2.   <u>Subpoena Duces Tecum</u>

Mr. Danzy's request to subpoena his own personal phone records from Verizon and AT&T seeks relevant documents and shall be granted.  *See* Mot. for Subpoenas; Subpoenas.  Mr. Danzy alleges that he properly notified Local 22 about his work availability but was denied work nevertheless.  *See* Compl. ¶ 1.  Defendants dispute this allegation and claim that Mr. Danzy did not properly call into Local 22's Job Line to report his availability as required.  *See* Sum. Judgment Mem. at 1, 13–14.  During discovery, Local 22 asked Mr. Danzy for all documents concerning his allegation that he "proactively and properly ma[de] his availability known."  *See* Requests at 4, No. 2.  Mr. Danzy unsuccessfully attempted to retrieve screen shots of calls to Local 22 from his own electronic devices first, and now moves for leave to subpoena his phone records directly.  *See* Request Response at 2; Status Report ¶ 6.  Because Mr. Danzy's phone records may show when and how frequently he called Local 22's Job Line to report his availability, these records are relevant to Mr. Danzy's claims and defenses, and the undersigned grants Mr. Danzy leave to issue his subpoenas to Verizon and AT&T.

Mr. Danzy's request for "Local 22's Personnel Data & Metrics" from Local 22's Benefits Office, at Ms. Jordan's attention, also is relevant to his claims and defenses to the extent that

---

[12] In its briefs supporting its motion for protective order, Local 22 maintains that five of the nine individuals that Mr. Danzy seeks to depose are Ms. Boykins, Mr. Shedleski, Mr. Bennett, Ms. Jordan, and Ms. Hartsock.  Local 22 alludes to the fact that the four remaining individuals whom Mr. Danzy would like to depose are current or former officers or employees of Local 22 but does not identify them by name.  Three of the four officers and agents are the named individual defendants, which means that Lynn Thomas must also be a former officer or employee of Local 22.  *See* Mot. for Prot. Order Stmt. at 6; ECF No. 51 (Reply in Support of Protective Order) at 4 & n.2.

19

these records may show his earnings, the number of hours he was available to work, and the number of hours he was assigned work compared to other Local 22 members.  On the other hand, Mr. Danzy's request for "Local 22's Personnel Data & Metrics" from three other employer signatories does not appear relevant to his claims and defenses.  While it is true that each third-party signatory likely maintains its own personnel records, it is not clear whether they would have "Local 22 Personnel Data & Metrics," and even if they did, Mr. Danzy seeks to subpoena the same records from Local 22's Benefits Office directly.  Therefore, any records from third-party signatories would be duplicative at best.  Accordingly, the undersigned grants Mr. Danzy leave to issue his subpoena to Local 22's Benefits Office but denies Mr. Danzy leave to issue subpoenas to Ford's Theatre, the JFK Center, and Wolf Trap.  *See* Mot. for Subpoenas; Subpoenas.

### D.  Compliance with and Good Cause to Modify the Scheduling Order

Local 22 argues that Mr. Danzy should be precluded from issuing any proposed subpoenas because they violate the scheduling order's limits on discovery in that they are untimely and seek more than five depositions.  *See* Mot. Prot. Order Stmt. at 4; Scheduling Order.  Specifically, Local 22 maintains that it did not receive notice of the fifteen subpoenas until 25 days before discovery closed, which it claims was not enough time for third parties to respond with documents, much less schedule, prepare, and hold multiple depositions, even if the subpoenas were issued the same day.  *See* Mot. Prot. Order Stmt. at 4.  Additionally, Mr. Danzy's request to subpoena nine people for depositions exceeds Mr. Danzy's five-deposition limit, and the undersigned has concluded that seven of the nine proposed depositions seek relevant non-cumulative information.  Thus, allowing those deposition to occur will require a modification of the scheduling order.

1.   <u>Timeliness and Extending the Discovery Period</u>

Mr. Danzy's motion to issue subpoenas is not so untimely that it would warrant a blanket

protective order.  This Court has enforced subpoenas issued twenty-seven days before the close

of discovery and upheld the right of a party to take depositions that were noticed for two days

after discovery closed.  *See Washington*, 230 F.R.D. at 25.  Additionally, even if the subpoenas

were, practically speaking, untimely, this Court has "considerable discretion in handling

discovery matters, including deciding whether to reopen or extend discovery" for good cause.

*Kellogg Brown & Root Servs. Inc.*, 285 F.R.D. at 137 (internal quotations and citations omitted);

*see* Fed. R. Civ. P. 16(b)(4).  When considering whether good cause exists to extend a

scheduling order, courts look to the diligence of the party seeking discovery.  *See Kellogg Brown*

*& Root Servs. Inc.*, 285 F.R.D. at 137.  Good cause may be established "if the party seeking

relief can show that the deadlines cannot reasonably be met despite the party's diligence."  *Watt*

*v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012)) (internal quotations and

citations omitted).  Local 22 claims that Mr. Danzy lacked diligence in seeking discovery

because he failed to complete his own discovery responses, did not confer with Local 22 about

his proposed subpoenas, and could not meet his own discovery requirements within the allotted

time.  *See* Mot. for Prot. Order Stmt. at 4–5.  Upon examining the record, the undersigned finds

that Mr. Danzy has acted diligently.

First, Mr. Danzy was diligent about completing his own discovery responses and tried to

cure any deficiencies three months before discovery ended.  *See* ECF No. 47-4, Exhibit E

(October 2019 Emails between Jacob Szewczyk and Mr. Danzy); Status Report ¶ 9.  His failure

to cure those deficiencies did not reflect a lack of diligence, and instead was attributable to

factors such as Mr. Danzy's objection to requests that he deemed privileged, or his inability to

retrieve documents from old electronic devices and his belief that he needed to subpoena documents instead.  *See* Status Report ¶¶ 6, 8–9.

Second, although Mr. Danzy did not expressly confer with Local 22 before filing his motion to issue subpoenas, he did provide Local 22 with sufficient notice and an opportunity to oppose.  Local Civil Rule 7(m) requires *pro se* parties and counsel to discuss any anticipated non-dispositive motions in good-faith before filing the motion "to determine whether there is any opposition to the relief sought" and to include a statement in the motion that this discussion occurred and a statement as to whether the motion is opposed.  *See* LCvR 7(m).  Mr. Danzy complied with the "spirit" of Local Rule 7(m) when he made Local 22 aware of his need to subpoena documents in an email and status report addressing his discovery responses.  *See* Status Report ¶¶ 6, 8–9; *Menoken v. Springer*, No. 03-1775 (HHK/AK), 2008 WL 11388466, at *2 (citing *Doe v. Dist. of Columbia*, 231 F.R.D. 27 (D.D.C. 2005)).  As a *pro se* plaintiff, Local 22 also knew that Mr. Danzy could not simply issue the subpoenas that he wanted and would need to seek approval from the Court first.  *See* Fed. R. Civ. P. 45(a)(3).  Additionally, as required by Rule 45 of the Federal Rules of Civil Procedure, Mr. Danzy gave Local 22 notice of his subpoenas before their issuance, and Local 22 was able to object by filing its instant motion for protective order.  *See id.* at 45(a)(4); Mot. for Prot. Order.

Third, Mr. Danzy's failure to meet his discovery requirements within his allotted time was reasonable and occurred despite Mr. Danzy's diligence.  For example, almost immediately after this Court entered a scheduling order for discovery, Mr. Danzy moved for leave to issue a subpoena to the Convention Center.  *See* Scheduling Order; Mot. to Subpoena Convention Center.  While still waiting for the Court to grant his request, Mr. Danzy also diligently and timely moved to extend time to complete discovery.  *See* Mot. to Extend.  Although Mr. Danzy's

instant motion for leave to issue subpoenas was filed just under a month before discovery closed, at the Motion Hearing, Mr. Danzy explained that he attempted to gather this discovery sooner by requesting it directly from third parties first, and the third parties then directed him to submit subpoenas instead.  *See* Oct. 21, 2019 Minute Order; Mot. for Subpoenas; Subpoenas. Moreover, at the Motion Hearing, Mr. Danzy also explained that he did not want to seek leave to issue his fifteen subpoenas sooner because he did not want to flood the Court with additional requests while it was still considering Mr. Danzy's first motion for leave to subpoena the Convention Center.  Indeed, once the Court granted Mr. Danzy leave to issue his subpoena to the Convention Center, Mr. Danzy moved for leave to issue his additional fifteen subpoenas within the next two weeks.[13]  The undersigned finds Mr. Danzy's explanation for his delay to be reasonable and therefore finds that Mr. Danzy could not have reasonably met his discovery deadlines in this case despite his diligence.  Therefore, even if Mr. Danzy's pending subpoenas are untimely, good cause exists to extend time to complete such discovery.

## 2. Allowing Mr. Danzy To Take Seven Depositions

There is also good cause to modify the scheduling order to permit Mr. Danzy to take seven depositions instead of the five originally authorized per side.  Mr. Danzy has moved for leave to take additional depositions, and granting that motion would require amending the scheduling order.  *See* Mot. to Increase Deps.  The analysis for amending a scheduling order to permit additional depositions is the same as amending it to allow additional time to complete discovery.  *Cf. In re Rail Freight Fuel Surcharge Antitrust Lit.*, 75 F. Supp. 3d 94, 98 (D.D.C. 2014) (applying the good-cause standard under Federal Rule of Civil Procedure 16 to determine

---

[13] Mr. Danzy submitted thirteen of the fifteen subpoenas to the Clerk of the Court on December 20, 2019 and submitted the two remaining ones to the Clerk of the Court on December 27, 2019.  *See* Mot. for Subpoenas; Subpoenas.

whether plaintiffs may add a supplemental expert).  A scheduling order may only be modified upon a showing of good cause, the analysis of which focuses primarily on the diligence of the moving party, and while prejudice to the other party is an important consideration, it is not the dominant criterion.  *See Valle v. Karagounis*, No. 19-cv-03764 (CJN), 2020 WL 5505299, at * 2 (D.D.C. Sept. 11, 2020) (granting leave to amend the complaint even though the deadline for doing so would incur additional discovery, included added depositions); Fed. R. Civ. P. 16(b)(4); *see also* LCVR 16.4.

At the Motion Hearing, Mr. Danzy explained that he initially agreed to the five-deposition limit as a compromise after Local 22 recommended an even lower limit of three depositions each.  It was not until Mr. Danzy began preparing for trial that he realized he needed to depose more than five people.  At that time, Mr. Danzy also claims that he approached Defendants with a request to allow him to increase the number of depositions that he may take, which was rejected.  The undersigned finds Mr. Danzy's explanation demonstrates his diligence in prosecuting his case despite his initial oversight as to the number of depositions that he thought he might need.  Moreover, because Mr. Danzy has shown that seven of the nine witnesses he seeks to depose have relevant, non-cumulative information, good cause exists to grant him leave to increase the number of depositions that he may take in this case.  In the interest of fairness, however, the undersigned has already limited three of the seven depositions that Mr. Danzy is permitted to take to two hours each, and notes that this modest scheduling adjustment is still less than the ten depositions that the Federal Rules of Civil Procedure presumptively authorize at the length of up to seven hours each.  *See* Fed. R. Civ. P. 30(a)(2), (d)(1); *see In re Rail Freight Fuel Surcharge Antitrust Lit.*, 75 F. Supp. 3d at 100 (limiting the scope of plaintiff's supplemental expert report to mitigate prejudice).

3. Fairness

As a final matter, when considering whether Mr. Danzy's discovery requests should be precluded because they violate the discovery order, this Court is guided by the general principle that "*pro se* litigants ... are entitled to wider latitude than those who are represented by counsel." *Childers*, 197 F.R.D. at 188. "Federal appellate courts, including the D.C. Circuit, will go to 'particular pains' to protect *pro se* litigants against the consequences of technical errors if injustice would otherwise result." *Id.* (citing *Beavers v. Lockhart*, 755 F.2d 657, 662 (8th Cir. 1985); *Council v. Clemmer*, 165 F.2d 249, 250 (D.C. Cir. 1947)). It would be unjust to deny Mr. Danzy access to any additional discovery in this case.

As a *pro se* plaintiff, Mr. Danzy cannot issue subpoenas without leave from this Court and sought that leave when discovery was still pending. *See* Mot. for Subpoenas; Subpoenas. Nonetheless, while discovery was still pending, Local 22 moved for a broad protective order denying Mr. Danzy leave to issue all his subpoenas. *See* Mot. for Prot. Order. In doing so, Local 22 opposed Mr. Danzy's requests for clearly pertinent information, including the depositions of its own officers and agents whom Mr. Danzy named as Individual Defendants, data and documents from Local 22's Benefit's Office, testimony from eye witnesses to an underlying altercation, and even Mr. Danzy's own personal phone records. Making matters worse, Local 22 moved quickly after discovery closed for summary judgment and is now using the fact that it filed a summary judgment motion as a reason to deny Mr. Danzy's still pending discovery requests. *See* Mot. for Sum. Judgment. Local 22 argues that it is unfair to allow discovery to continue after it moved for dispositive relief. But that is a situation of Local 22's own making, as it could have asked that summary judgment briefing be deferred until the discovery motions were resolved, or sought guidance from the Court about how to proceed.

25

Indeed, Defendants' summary judgment arguments highlight the unfairness of disallowing further discovery.  In their motion, Defendants argue that Mr. Danzy has no evidence to support his claim.  *See* Sum. Judgment Mem. at 1, 13–14.  Likewise, after objecting specifically to Mr. Danzy's request to subpoena Individual Defendants and Ms. Jordan for depositions, Defendants have relied on declarations from each of the same individuals to support summary judgment.  *See generally* Mot. for Sum. Judgment.  Defendants should not be allowed to manipulate their superior familiarity with the rules of discovery to deprive Mr. Danzy of an opportunity to build his case.  To rule otherwise would encourage gamesmanship, and be patently unfair to Mr. Danzy.

### III.     Reopening Discovery

As a final matter, the undersigned finds that good cause exists to reopen discovery to allow time for Mr. Danzy to issue and for recipients to comply with the permitted subpoenas.  As previously discussed, "[a] schedul[ing order] may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Accordingly, "reopening discovery would [also] require a showing of good cause pursuant to [Rule 16(b)(4)]."  *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (citation omitted).  Although "[t]he primary factor in determining whether good cause exists is the diligence of the party," *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 144 (D.D.C. 2013), courts have considered other factors including "(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that the discovery will lead to relevant evidence."  *Watt*, 840 F.

Supp. 2d at 326 (citing *Childers*, 197 F.R.D. at 188; *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987); *Vineberg v. Bissonnette*, 548 F.3d 50, 55 (1st Cir. 2008)).

To begin, factors three, four, and six weigh in favor of reopening discovery.  As already discussed, Local 22 has not established with specific evidence that it will be harmed by granting Mr. Danzy leave to issue certain subpoenas.  To the contrary, with additional time for discovery, Local 22 may obtain more complete responses to its own discovery requests as the undersigned has directed Mr. Danzy to supplement and answer Local 22's written discovery requests during this same period.  Likewise, the undersigned has already determined that Mr. Danzy has been reasonably diligent in obtaining discovery within the guidelines established by this Court and the subpoenas that Mr. Danzy is permitted to issue seek relevant evidence.

Factor one likewise weighs in favor of reopening discovery because while Defendants have moved for summary judgment, the Court has not ruled on the dispositive motion, and no trial date has been set.  Finally, factors two and five weigh against reopening discovery, but only slightly.  Defendants oppose any request to reopen discovery, and even though Mr. Danzy's requests may have been foreseeable or could have been requested sooner, the undersigned has already determined that his delay in seeking additional discovery sooner is reasonable.

## CONCLUSION

For the foregoing reasons, the undersigned GRANTS Local 22's motion to compel, GRANTS-IN-PART and DENIES-IN-PART Mr. Danzy's motion to issue subpoenas, DENIES Local 22's motion for protective order, and GRANTS-IN-PART Mr. Danzy's motion to take

additional depositions.  The undersigned will include in a separate and forthcoming order a list of specific discovery tasks and deadlines for Mr. Danzy and Defendants to complete that are consistent with this Memorandum Opinion.


Dated:  11/23/2020

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE