UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAREN DANZY,<br><br>*Plaintiff,*<br><br>v.<br><br>**IATSE LOCAL 22**, *et al.*,<br><br>*Defendants.* | Case No. 1:17-cv-2083-RCL |

## MEMORANDUM OPINION

*Pro se* plaintiff Daren Danzy sued defendant International Alliance of Theatrical and Stage Employees Local 22 ("Local 22") and individual defendants Irving Chuck Clay, John Brasseux, and Cathy Sonneborn, in their "official capacities" as Local 22 leadership. Am. Compl. ¶¶ 1, 4, 5, ECF No. 18. Danzy alleges that defendants discriminated against him based on his race and sex when they failed to refer him to "merited" jobs and suspended him. Now, defendants move for summary judgment. *See* Defs.' Renewed Mot. for Summ. J. ("Defs.' Mot.") 25, ECF No. 122. Defendants argue that Danzy cannot proffer evidence to support his claims and that they are entitled to judgment as a matter of law. *Id.* Despite the Court extending the deadline, Danzy did not timely respond. *See* Order, ECF No. 124. Upon consideration of the defendants' filing, applicable law, and the record herein, the Court will **GRANT** defendants' motion for summary judgment.

1

## I.   BACKGROUND

**A. Factual Background**[1]

Local 22 is an unincorporated labor organization that represents employees in the stagehand industry in the Washington, D.C. metropolitan area. Defs.' Facts ¶ 1. Local 22 maintains a referral system, known as the Referral Hall, by which it refers stagehands, including Danzy, to employers who are signatories to Local 22's collective bargaining agreement. *Id.* ¶ 1. Plaintiff Danzy is a Black male who received employment referrals to work as a stagehand from 2002 to 2018. *Id.* ¶¶ 1, 3, 17.

Local 22 administers the Referral Hall in accordance with Local 22's Referral Rules and Procedures (the "Referral Rules"). *Id.* ¶ 4; *see* Decl. of Cathy Sonneborn ("Sonneborn Decl.") Ex. 1, ECF No. 133-1 at 7. Local 22 maintains fours referral lists—the A, B, C, and D lists. Defs.' Facts ¶ 6. The Referral Rules require Local 22 to proceed alphabetically through each list when making referrals—so all qualified individuals on the A list are referred before all individuals on the B list, and the B list referrals take place before moving to the C list., and so on *Id.* ¶ 7. The Referral Rules also require individuals seeking work through the Referral Hall to report their work availability to Local 22 every seven days. *Id.* ¶ 5.

Danzy, at all relevant times in this case, was a stagehand on the C list. *Id.* ¶ 13. Despite opportunity to advance, Danzy never attempted to move up to the B list. *Id.* ¶ 14. Danzy "rarely"

---

[1] These facts are taken from Local 22's "Statement of Material Facts Not in Dispute." *See* Defs.' Statement of Material Facts ("Defs.' Facts"), ECF No. 122. After Danzy missed his deadline to respond to defendants' motion for summary judgment, the Court granted him additional time, considering his *pro se* status, and ordered Danzy to submit his response by March 10, 2022, or risk conceding defendants' facts. ECF No. 124; *see Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (stating that district courts must inform *pro se* litigants that, on a motion for summary judgment any factual assertions submitted by the movant will be accepted as being true unless the *pro se* litigant submits a response). Danzy did not respond to defendants' filing and instead asked for an additional extension of time. ECF No. 125. Danzy did not show good cause, so the Court denied his request. ECF No. 128. The facts stated in defendants' motion are accordingly considered undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Neal*, 963 F.2d at 453.

informed Local 22 of his work availability. *Id.* ¶ 18. Danzy also worked only "sporadically" for Local 22—between 2002 and 2018, he earned $10,000 or more from Local 22 referrals in only three calendar years, and he never earned $20,000 or more in a calendar year. *Id.* ¶ 17. Danzy was sometimes unavailable to work during "seasonal high volume call" times like holidays. *Id.* ¶ 22.

The Referral Rules establish procedures for addressing misconduct on a jobsite. *Id.* ¶ 25; Sonneborn Decl. Ex. 1, ECF No. 133-1 at 7. While Local 22's business agent, John Brasseux, can unilaterally warn or suspend a stagehand for up to seven days, only the Local 22 Executive Board can suspend a stagehand from the Referral Hall for more than seven days. *Id.* ¶ 25. And any disciplinary action, like a suspension, must be approved by Local 22's membership. *Id.* ¶ 41.

Local 22 received a misconduct complaint against Danzy in January 2017. *Id.* ¶ 26. The complaint alleged that Danzy violently confronted multiple people while working at the Washington Convention Center on a Referral Hall job. *Id.* Danzy threw his work gloves at one stagehand and threw fellow Local 22 stagehand Curren Bennett "to the ground." *Id.*

On January 26, 2017, Local 22 notified Danzy of the allegations against him. *Id.* ¶ 27. Those charges were supplemented a week later after other stagehands accused Danzy of sexually harassing them while they were working at the Washington Convention Center. *Id.* One female stagehand alleged Danzy had told her "you can find something better to do with your mouth" and "I hope you taste as good as this cake." *Id.* ¶ 31. More than one of the women stagehands working at the Washington Convention Center complained about Danzy's inappropriate comments. *Id.*

On February 7, 2017, the Local 22 Executive Board held a disciplinary hearing for Danzy. *Id.* ¶ 28. At the hearing, Brasseux, as the "charging" party, and Danzy, as the "charged" party, had an opportunity to present evidence, call witnesses, examine witnesses, and cross-examine witnesses. *Id.* ¶ 29. The Executive Board also watched surveillance video from the incident. *Id.*

3

¶ 35. Danzy admitted to hitting another stagehand with his gloves and pushing Bennett to the ground. *Id.* ¶¶ 34, 35, 37. Danzy gave no reassurance that he would not repeat his actions and insisted his actions were "rational." *Id.* ¶¶ 38–39. Two women stagehands also testified about Danzy's sexual harassment. *Id.* ¶ 31.

The Local 22 Executive Board concluded that Danzy had engaged in sexual harassment and acts of physical violence. *Id.* ¶ 40. The Executive Board recommended that Danzy be suspended from the Referral Hall for one year, with his return contingent upon the completion of anger-management and sexual-harassment classes. *Id.* ¶ 41. The Executive Board presented its recommendation at the next Local 22 membership meeting on February 11, 2017, and Local 22 membership unanimously approved. *Id.* ¶ 42. Danzy complied with the Executive Board's requirements, has been readmitted into the Referral Hall, and has since been referred for positions. *Id.* ¶ 45.

On August 31, 2017, Danzy filed a lawsuit in the Superior Court of the District of Columbia against Local 22 and the three individual plaintiffs, alleging retaliation, a hostile work environment, and race and sex discrimination. ECF No. 1; Am. Compl. ECF No. 18. On October 6, 2017, Local 22 removed the case to this Court. *Id.* After five years of litigation, only one claim remains: a discrimination claim under Title VII of the Civil Rights Act of 1964. *See* Order Granting Partial Dismissal, ECF No. 29 (dismissing retaliation and hostile work environment claims with prejudice). Danzy contends that defendants unlawfully discriminated against him based on his race and sex when they (1) failed to refer him for jobs through the Referral Hall and (2) suspended him. Defendants jointly move for summary judgment. Defs.' Mot., ECF No. 122. Their motion is now ripe.

4

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Courts construe facts and draw inferences in favor of the nonmovant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

If a party fails to address another party's assertion of fact, Rule 56(e) states that a court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). "[A]s the rule makes clear, [summary] judgment is granted only after the District Court satisfies itself that the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (holding that if, after "after adequate time for discovery," the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper).

### B. Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(l). Because direct evidence of discriminatory animus is rarely present, Title VII discrimination claims are typically assessed under the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Following this framework, the employee carries "the initial burden under the statute of establishing a *prima facie* case" of discrimination. *Id.* at 802. A plaintiff can establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Nurriddin v. Bolden*, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).

If the employee establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [the action]" so as to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

If the employer offers legitimate, non-discriminatory reasons for the action, the question of whether an employee has established a *prima facie* case is an "unnecessary sideshow" that drops away. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, "in considering an employer's motion for summary judgment . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

The employee may provide sufficient evidence to demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 255. Either way, the plaintiff must show "both that [employer's proffered] the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 503, 515 (1993). Evidence of pretext may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

### III.  DISCUSSION

Danzy's complaint originally alleged that he suffered two adverse actions because of defendants' discrimination: (1) a lack of job referrals and (2) the 2017 suspension. Am. Compl. ¶¶ 12, 13, 30. Defendants deny that their actions were discriminatory. Regarding referrals, defendants argue that they always followed their Referral Rules. Defs,' Mot. 13. As to the suspension, defendants contend that they suspended Danzy for violently assaulting a fellow stagehand and sexually harassing other stagehands. *Id.* 14. Because the defendants have proffered legitimate, non-discriminatory reasons for the adverse actions, this Court need only determine whether there is sufficient evidence on the record for a reasonable jury to conclude that these non-discriminatory reasons are pretexts for unlawful discrimination. *Hicks*, 509 U.S. at 502. There is not. No reasonable jury could find that defendants discriminated against Danzy.

### A. No Reasonable Jury Could Find That Danzy Was Excluded From Referrals Due To Racial Animus or Sexism

Danzy's first claim is that he was discriminated against and received a "reduction" in referrals based on his race. Danzy Dep. 23:6–10, ECF No. 53-9 at 7. Defendants counter that they complied with their objective Referral Rules in all interactions with Danzy and did not reduce his referrals. Def.'s Mot 1. The record is devoid of any evidence that this legitimate, non-discriminatory reason for Danzy's allegedly low or "reduced" referrals—compliance with objective rules that govern all referral-seekers—is a pretext for racial or sex discrimination. *Hicks*, 509 U.S. at 502.

There are several ways to illustrate pretext. One way is to show an employer's "better treatment of similarly situated employees outside the plaintiff's protected group." *Johnson*, 798 F.3d at 1092. But it is the plaintiff's duty to proffer similarly situated employees that received better treatment, *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016), and Danzy has failed to proffer any comparators. Alternatively, an employer's "pattern of poor treatment of other employees in the *same* protected group as" plaintiff can provide evidence of pretext. *Johnson*, 798 F.3d at 1092 (emphasis added). But the record lacks evidence of a pattern of a poor treatment of Black men or men in general. In fact, undisputed facts illustrate that Local 22 referred many "African-American stagehands" around high-volume call times. Defs.' Facts ¶¶ 23–24.

Perhaps most relevant here, an employer's "deviation from established procedures or criteria" can serve as evidence of pretext for unlawful discrimination. *Walker*, 798 F.3d at 1092. Defendants steadfastly maintain that they complied with the Referral Rules in their interactions with Danzy. Defs.' Mot. 13. The Referral Rules require Local 22 to refer stagehands from the A list and the B list before reaching the C list, the list Danzy is on. Defs.' Facts ¶¶ 7, 13. Danzy never

8

attempted to move to a higher priority list. *Id.* ¶ 14. And Danzy "rarely" called in to inform Local 22 of his availability, as *required* to receive referrals. Defs.' Facts ¶¶ 5, 18; Sonneborn Decl. Ex. 1, ECF No. 122-3 at 13. He would call in during some "high volume" times, but only if he "wasn't traveling." Danzy Dep. 90:9–10. And he was often traveling or working other jobs. Defs.' Facts ¶ 20. In his deposition, Danzy stated that a stagehand who "never did stagehand work a day in his life" and could be "at best" a D-list stagehand was referred as much as Danzy. Danzy Dep. 60:13–18. But Danzy does not allege knowledge that this stagehand is on the D list or even that this stagehand told him he was on the D list. Danzy's assumption, alone, cannot save him from summary judgment. While evidence need not be admissible at the summary-judgment stage, the evidence must be "capable of being converted into admissible evidence." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). Pure speculation without personal knowledge is not admissible evidence. Fed. R. Evid. 602.

In his deposition, Danzy also provides an incident of direct discrimination—he states that he was called a racial slur. Danzy Dep. 23:6–10. He does not say who called him a racial slur. *Id.* But "[e]vidence of discrimination 'does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself.'" *Sewell v. Chao*, 532 F. Supp. 2d 126, 138 n.8 (D.D.C. 2008), aff'd sub. nom. *Sewell v. Hugler*, No. 08-5079, 2009 WL 585660 (D.C. Cir. Feb 25, 2009) (quoting *Ayala-Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996)). While offensive, this single remark is not evidence of discrimination.

9

## B. No Reasonable Jury Could Find That Danzy's Suspension Was Due To Racial Animus or Sexism

Danzy's claims based on his suspension fail as well. Danzy was accused of violently assaulting a fellow worker, including attempting to "place him in a chokehold," Decl. of John Brasseux ("Brasseux Decl.") ¶ 12, ECF No. 122-1, and repeatedly sexually harassing a fellow female stagehand, Defs.' Facts ¶ 31. Danzy's assault was captured on surveillance video. *Id.* ¶ 35. After a full hearing with the Local 22 Executive Board, and upon a unanimous vote of Local 22 membership, Danzy was suspended for a year. *Id.* ¶¶ 41–42. Beyond Danzy's allegations of animus in his complaint, there is no evidentiary support that his suspension was pretextual. He has provided no evidence "that would allow a reasonable jury to conclude that the legitimate, non-discriminatory reason asserted" for suspending him—defendants' conclusion that he assaulted and sexually harassed fellow stagehands—was pretextual. *See Morris v. Carter Goble Lee, Inc.*, 113 F. Supp. 3d 289, 296 (D.D.C. 2015) (granting summary judgment to an employer after finding no evidence of pretext to rebut employer's "reasonable and honest belief" that employee engaged in specific misconduct).

The "legitimate and non-discriminatory nature of [Local 22's] decision to suspend plaintiff is supported by the detailed process that [it] undertook to reach its decision." *Anyaso v. United States Capitol Police*, 39 F. Supp. 3d 34, 41 (D.D.C. 2014). The Local 22 Executive Board followed strict procedures and provided Danzy a full opportunity for a hearing. Defs'. Facts ¶¶ 28–29. The hearing was recorded, and Danzy was permitted to present evidence, examine witnesses, and cross-examine witnesses—including his accusers. *Id.* ¶¶ 29–30. And even after the Local 22 Executive Board made its decision, it could take no action before it secured the approval of Local 22's membership. Defs.' Facts ¶ 41. The *entirety* of Local 22's membership voted in support of

his suspension. *Id.* ¶ 42. Moreover, in the hearing, Danzy *admitted* that he threw his gloves and struck a stagehand, and that he "threw [Bennett] to the ground." Defs.' Facts ¶ 34–35.

Defendants have presented two incidents of severe workplace misconduct—assault and sexual harassment. After a fair hearing, a finding that both these allegations of misconduct occurred, a recommendation, and a vote of the entire Local 22 membership, they suspended Danzy. There is no evidence to indicate that this legitimate, non-discriminatory reason is a pretext for racial or sexist discrimination, and defendants are entitled to judgment as a matter of law.[2]

### IV.   CONCLUSION

Defendants have proffered legitimate, non-discriminatory reasons for both adverse actions that Danzy alleged. The record and undisputed facts do not support Danzy's Title VII claim, and no reasonable juror could find that defendants discriminated against Danzy. Defendants are entitled to judgment as a matter of law. The Court will **GRANT** defendants' motion for summary judgment. A separate order consistent with this memorandum will follow.

Date: 3/24/22

Royce C. Lamberth
United States District Judge

---

[2] "Title VII claims brought against corporate officers in their 'official capacity' are dismissed as redundant," *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 190 (D.D.C. 2013), so this disposition also involves dismissing claims against the individual defendants.

11